## ÆOLIAN CO. OF MISSOURI v. VICTOR TALKING MACH. CO.

(Circuit Court of Appeals, Third Circuit. December 19, 1916.)

No. 2117.

PATENTS ☞212(1)—LICENSES—CONSTRUCTION.

Defendant, the manufacturer of talking machines which were patented, entered into a contract with plaintiff for the distribution of its machines. The contract expressly declared defendant's desire to maintain control of its patented machines in the hands of the public, as well as in the hands of the distributors and dealers, and provided that machines and records should not be sold, but only licensed for use during the life of the patent; defendant having the right to retake the machines and records upon certain conditions. The contract further declared that distributors should not license dealers who had not first signed a license agreement furnished by defendant, and declared that defendant should have the right to terminate the license agreement at any time for cause or otherwise, notice to be forwarded by mail in writing to the last known address of the licensee; the termination and annulment taking effect at once. Plaintiff became interested in the distribution of competing talking machines. Defendant filed a written notice terminating the license, and thereunder refused to furnish machines, etc., ordered before the termination. The orders were acknowledged by statements reciting that, while defendant did not obligate itself to fill all orders within a specified time, though requested, it would make every reasonable effort to do so. *Held* that, as defendant, being the patentee, had an absolute monopoly, and might merely license the use of its machines, instead of disposing of them absolutely, and as the license was intended to preserve that right, defendant's refusal to furnish the machines after termination gave no right of action.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 312–313; Dec. Dig. ☞212(1).]

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Action by the Æolian Company of Missouri against the Victor Talking Machine Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

George D. Beattys, of New York City (Frank S. Katzenbach, Jr., of Trenton, N. J., of counsel), for plaintiff in error.

Samuel H. Richards and Thomas E. French, both of Camden, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. For several years the Æolian Company of St. Louis was a "distributor" of the Victor Talking Machine Company's products, but on September 30, 1914, the relation ceased. At that time several orders of the Æolian Company had not been filled, and as the Victor Company afterward refused to supply the machines the present suit was brought to recover damages therefor. The District Court entered a judgment of nonsuit.

The controlling question is the character of the relation between the parties. In the plaintiff's view this was the ordinary relation of buyer and seller, and if that be true the nonsuit can hardly be sustained. The defendant denies this position, and relies on the terms of the contract hereinafter referred to. No material fact is in dispute. The Victor Company has a factory in Camden, N. J., and is a well-known maker of talking machines, records, and other articles used in reproducing sound. Most of its goods are patented, and instead of selling them outright it prefers to exercise its undoubted power to part with them only under a limited license. These licenses take their place in a system of distribution, part of the system being involved in the present suit. The Æolian Company was one of the "distributors"—the class nearest to the maker—and, although in some respects it resembles the wholesaler in an ordinary business, nevertheless it differs in important particulars.

The plaintiff's business connection with the defendant began in 1910, but a new contract was made on September 17, 1913, and we need not go behind that instrument. The contract is in writing, was prepared by the defendant, and embraces many provisions. Its scope would not appear satisfactorily from a brief summary, and for that reason we quote most of its articles in full:

"(1) Desiring to maintain control of its patented talking machines and records in the hands of the public, as well as in the hands of the distributor and dealer, in order, among other things, that the license conditions under which the goods are put out to the public may be enforced, the Victor Talking Machine Company (hereinafter referred to as the Victor Company), from August 1, 1913, licenses only the *use* of its patented goods under the conditions hereinafter noted, the title remaining in the Victor Company with the right to repossess and retake at any time the patented goods upon the payment to the user of the royalty paid by him for the use of the said patented goods, less 5 per cent. per annum of the list royalty as to machines and 10 per cent. per annum of the list royalty as to records, for each year, or fraction of a year, the user shall have had the use thereof; this right, however, to be ex-

ercised only at the will of the Victor Company. In view of the fact, among other things, that other disc records and disc machines have been, and are being, placed upon the market, some of inferior quality, as well as other talking machine supplies of inferior quality, the Victor Company insists on Victor machines being used only with Victor records and Victor supplies, and Victor records being used only on Victor machines and with Victor supplies, and the Victor Company now licenses its patented talking machines for use only with disc records manufactured by it, and licenses its patented records for use only upon talking machines manufactured by the Victor Company; the said Victor talking machines and records are further licensed only for use with needle supplies sold by the Victor Company, and, further, the machines and records of the Victor Company are licensed for use only with sound boxes manufactured by it under its patents. Victor records are licensed for use only for reproducing sound on Victor machines with Victor supplies, and for no other purpose. The Victor Company has spent large sums of money in perfecting its records, among other things, and has found that the use of inferior needles is disastrous and destructive to the records, both as to the reproducing quality and as to wear. It has also spent large sums of money in perfecting its needles, in order to produce the best results in use in combination with its records, machines, and sound boxes, and all these conditions of license must be strictly observed. All Victor talking machines, records, and sound boxes are covered by letters patent included in the list hereinafter noted, owned and controlled by the Victor Company, and they are not sold, but *licensed for use only* under the conditions noted on the labels accompanying the goods, and as herein provided, and any attempted sale, or any use of the said patented goods in violation of the conditions, and in excess of the license, will constitute an infringement of the said patents of the Company. The license is granted for the term of the patent protecting the goods having the longest term to run, noted upon the license label.

"(2) A limited license is granted to the distributor accepting the conditions hereof to use the Victor patented machines, records, and sound boxes procured by the distributor from the Victor Company under the said conditions of license, for demonstrating purposes, and in distributing the said goods to assign the same right to any regularly licensed dealer of the Victor Company, with the further right to such dealer to assign the right to the public to use the said goods for the purpose of reproducing sound therefrom in accordance with the patents, upon the payment of the full list royalty or license fee (as per the current schedule as issued by the Victor Company, a copy of which accompanies this agreement and as adopted and fixed by the Victor Company from time to time), under and subject to the conditions of the license herein noted, and noted upon the labels accompanying the goods. A similar right is also granted to the distributor to assign to the public the right to use the said goods under the same conditions. All dealings between distributors and dealers and the public and all other parties in the handling of the said Victor patented goods are, and are understood to be, assignments to the user of the license or right to use the said patented goods strictly under the conditions herein noted, and under the conditions noted on the license labels accompanying the said patented goods, and no license shall be assigned by any distributor to a dealer at less than the dealers' licensed discount royalty, or by any dealer to a user, or any other party at less than the full list royalty, and then only under and subject to the conditions of license. The license only relates to the particular goods manufactured by and received from the Victor Company, and is limited strictly to said goods.

"(3) Books of record, showing the license transactions in full with dealers and the public, must be kept by the distributor, and held accessible, if requested, to the Victor Company, or its representative, and such statistics shall be furnished to the Victor Company when requested. The discount quoted to distributors and dealers applies only to Victor patented goods, and the goods are for use only in the United States of America. The license to the public is and shall be only a limited license to use the said patented goods herein noted, for the purpose only of reproducing sound, under and subject to all the

conditions herein noted, and to the conditions noted upon the labels accompanying the goods, among which are the following:

"(a) The Victor Company retains title, and also the right to repossess the said patented machines, records, and sound boxes at will, as, among other things, in the case of breach of any of the conditions of license upon the payment to the user of the royalty paid by him for the use of the said patented goods, less 5 per cent. per annum of the list royalty as to machines and sound boxes, and 10 per cent. per annum of the list royalty as to records, for each year, or fraction of a year, the user shall have had the use thereof.

"(b) Victor machines are licensed for use only with Victor records.

"(c) Victor records are licensed for use only with Victor machines.

"(d) Victor machines and Victor records are licensed for use only in connection with Victor sound boxes; Victor sound boxes are licensed for use only in connection with Victor machines and Victor records.

"(e) Victor machines and records are licensed for use only with needles supplied by the Victor Company; needles will be supplied by the Victor Company, direct to any licensee of any of its patented machines at wholesale price, upon written request.

"(f) Victor machines and records are licensed for use by the public only when the full list royalty shall have been paid.

"(g) Victor machines and records are not licensed for use for public entertainment for profit; for a license for such public use an extra license fee of ten per cent. (10%) of the full list royalty shall be payable.

"(h) Only the license to use said Victor patented goods is granted, and all other patent rights are retained by the Victor Company; any use in excess of the rights granted, and any violation of the conditions, will constitute infringement of the Victor Company's patents and render the parties so using without right, or violating any of the conditions, liable to an action for infringement of the said Victor Company's patents. A breach of any of the conditions on the part of the distributor will render him also liable not only for infringement of the patents but for an action on contract, or other proper remedy.

"(i) The Victor machines, sound boxes, and records, at the expiration of the patent having the longest term to run, under which the goods are licensed, shall become the property of the licensee (the goods being then free of the patents, the subject-matter of the license): Provided that the licensee shall have faithfully observed the conditions of license, and the Victor Company shall not have previously taken possession of the goods as herein provided.

"(4) Distributors must secure the signature of the applicant for dealers' discounts upon our 'Dealers' Application Blank,' the distributor filling in the other necessary information required thereon, and forwarding the same to the Victor Company, accompanied by the dealers' license agreement signed in triplicate for acceptance, and a distributor must secure from the Victor Company before shipping the initial order of Victor patented goods its consent to establish the applicant.

"(5) Distributors shall not quote a discount from our list royalties to any one but a regularly licensed talking machine dealer in Victor patented goods, or to a person having a regularly established store or place of business, and who will take an initial order of not less than three Victor machines, of different styles, and one hundred Victor records, excepting and not including in the initial order any style of Victor Victrola listing above $125, or a Victor Auxetophone, and the order must be for the purpose of engaging in a legitimate talking machine business. Distributors must not, directly or indirectly, allow better discount royalties than those authorized by the Victor Company, nor shall they allow any discount whatever from the Victor Company's current list royalties to any suspended dealers, or to any dealers who have not signed the dealers' license agreement.

"(6) Distributors must not license, either directly or indirectly, Victor patented goods to any dealer who will not first sign a license agreement furnished by the Victor Company, containing conditions substantially as herein provided, relative to the use of said patented goods, and governing and control-

ling the same; and distributors must furnish the Victor Company with a properly and duly executed dealers' license agreement containing the said conditions, within ten days of the date of the execution of each of said license agreements. Distributors shall not furnish any dealer or dealers with said patented Victor goods who have violated their dealers' license agreement, and to whom the Victor Company refuses to extend further license privileges, a list of which names and addresses of such dealers will be furnished by the Victor Company to the distributor."

"(8) All Victor patented goods are licensed through licensed Victor distributors and licensed Victor dealers, and under the conditions noted. The distributors, as well as the dealers, are required to keep the records in the envelopes, containing the license label, in which they are put out by the Victor Company, at all times, and to deliver all records in the said envelopes. No license is granted if the record is not delivered in the envelope containing said conditions."

"(12) Licensed Victor distributors are permitted to exchange Victor products with each other, at either distributors' or dealers' royalty.

"(13) Victor patented goods are licensed for use only in the United States of America, and must not be shipped outside this territory, and any misuse of the said license to use by any distributor or dealer will be construed as a violation of the license agreement, and render the distributor or dealer, among other things, liable to annulment of the license agreement. Distributors must co-operate in absolute good faith with the Victor Company."

"(15) The Victor Company, also reserves the right for itself and its representatives of access at all reasonable hours to its said machines in the possession of any of its licensees, for the purpose of repairing the same or placing the same in proper operative condition should the said machine in the judgment of the Victor Company require inspection, repair or adjusting, though the Victor Company assumes no obligation so to do.

"(16) A consideration for the fixing of the license royalties by the Victor Company at the figures at which they are fixed is, among other things, that the title of the patented goods remains in the Victor Company, and only the right to use is granted as hereinbefore provided, and only with Victor supplies, and that all the covenants and conditions will be strictly observed."

Article 14 will be considered hereafter.

Under this contract the parties did business for a year. From time to time the plaintiff mailed orders for goods, and these were all acknowledged in the following form:

"We acknowledge with pleasure receipt of your favor of ———, which will be given our careful attention at the earliest possible date, but we cannot obligate ourselves to fill all orders completely or within a specified time even when so requested, although we will make every reasonable effort."

Of these orders the complaint has to do with nine; some of the goods included therein have been delivered, and on these the plaintiff has paid the agreed royalties. The undelivered goods are the subject of this suit, and as to these the parties have stipulated that, although delivery was reasonably possible after September 30, 1914, the defendant made no effort to deliver—the reason being that on September 9 the defendant notified the plaintiff that the agreement would be terminated on September 30, and followed this notice on September 30 by a letter stating that the agreement had been terminated and annulled, "to take effect at once." The defendant justifies this act under article 14, which provides inter alia:

"The Victor Company shall have the right, and reserves unto itself the right, to terminate this license agreement at any time for cause or otherwise;

notice of the termination of said license agreement to be forwarded by mail in writing by the Victor Company to the last known address of the party or parties accepting this agreement; the said termination and annulment of said license agreement to take effect at once."

(At this point it should be said that, although the District Court, disposed of this case by a nonsuit, some facts were in evidence that ordinarily would have belonged to the defense. They are contained in a written stipulation that was offered as a whole by the plaintiff, and it thus happened that a part of the defense is in the record.) Probably one reason for the cancellation is the following facts, which appear in the stipulation: A Connecticut corporation owns the majority of the plaintiff's stock, and has the same principal officers; the St. Louis company being evidently one of its branches or subsidiaries. When the parties arranged for the agreement in question they understood that the Connecticut company and its branches at Cincinnati, Indianapolis, and Dayton, would handle the Victor goods as retail dealers; but afterward, and before September 30, 1914, the Connecticut Company agreed with the Columbia Company, a competitor of the Victor, that the branches in St. Louis, Cincinnati, Indianapolis, and Dayton should be supplied with Columbia goods whenever the Connecticut company should so desire. Further, before September 30 the Connecticut company had begun to make a sound-reproducing instrument of its own—the Æolian-Vocalion—and had taken preliminary steps toward having its own agents deal in this instrument, giving the agents to understand that they would be allowed to handle the Vocalion whenever the Connecticut company should so desire. Nearly all these agents were also either distributors or retail dealers for the Victor Company, and the consent of the latter was neither asked nor given, either to this arrangement or to the arrangement concerning the Columbia goods. It is true that the defendant's answer sets up other breaches of the plaintiff's agreement, but no evidence is before us except the facts just outlined, which are alleged to violate the plaintiff's covenant to co-operate in absolute good faith with the Victor Company.

We have now reached the point where the parties come most directly into collision. The plaintiff concedes the defendant's right under article 14 to annul the agreement "for cause or otherwise," but contends that the present suit is maintainable under the following part of the article, which has not yet been quoted:

"It is distinctly understood and agreed however that any such termination, or any termination of the same, shall not relieve the party operating under this license agreement from any liability to the Victor Company which may have occurred or accrued during the existence of the agreement. The distributor shall have the privilege to withdraw as licensee when he so desires."

The argument is that whatever rights of action the defendant may thus have expressly reserved to itself must be implied in favor of the plaintiff, on the ground that such rights are necessarily reciprocal. But we do not know, and we are not called upon to decide, what rights the defendant may in fact possess under the language just quoted.

The scope of these words is not now in issue, and cannot properly be determined. Several questions are readily supposable, for example, the contract having been canceled, would the Æolian Company be still bound for unpaid royalties in respect of goods already delivered? As to such machines, would its obligation be discharged by returning or offering to return them? Might the Victor Company prohibit the Æolian Company from further using machines on which royalty had already been paid? Might it prohibit the Æolian Company from licensing retail dealers in respect of such machines? Did the withdrawal of the license affect the future only? If it affected the past also, to what extent? We intimate no opinion concerning these questions, or any others that might be stated; they are not raised and cannot be decided in this suit.

Our only concern is with the rights of the plaintiff under a contract that is conceded to be no longer in force. The plaintiff has no express right, and must therefore rely on such implied right as may be granted by the general rules of law or equity. In our opinion these rules do not support the right now claimed, but rather tend to deny it. The plaintiff must recover, if at all, on the theory of a lawful right to have the undelivered machines themselves; for if this be not true no damage has been done by nondelivery. The theory seems to be untenable; the machines would have been useless without a license, and there was no license after the contract was canceled. To allow recovery of damages for nondelivery under such circumstances, would in effect prolong the agreement after its lawful termination, and would in effect compel the defendant to continue the plaintiff's license after the license had been revoked. We are considering rights under patents, and we must remember that while a patent lasts it is a monopoly, and that the patentee is a despot whose power has only been tempered here and there. He may license whom he will, and if he reserve the power to cancel the license he may do so and may thus resume his own complete control. Of course, he must fulfill whatever obligation he may have undertaken while the license was in force; but he is not bound to continue a license that may be revoked at his own pleasure. Unless we do violence to the fundamental conceptions of the patent law, we cannot regard the agreement in question as a contract of sale between the patentee and a distributor. Both in form and in substance it is a limited license, and we have no power to make a new contract for the parties. Taking its provisions as a whole, it resembles the appointment of a selling agent, with an interest in the thing to be sold, and such a relation would suggest almost inevitably that some precaution should be taken against a lack of harmony, which would obviously be fatal to the object of the contract. At all events, precaution was taken in the contract before us, although its value would be much impaired if the plaintiff's contention should succeed. We think it impossible to treat these parties substantially as vendor and vendee, and unless we so treat them the plaintiff has no case.

We have no opinion about the plaintiff's rights in respect of goods already received and settled for. All we decide is that after article 14

was enforced, and the agreement was canceled the plaintiff had no legal right to the delivery of any more machines, and to a license for their use, and therefore that such a right cannot be assumed as the basis for recovery in a suit for failure to deliver.

The judgment is affirmed.